**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI**

| | | |
|---|---|---|
| **IN RE: EMERSON ELECTRIC CO.** | ) | |
| **WET/DRY VAC MARKETING AND** | ) | |
| **SALES LITIGATION,** | ) | MDL No. 2382 |
| | ) | |
| | ) | Civil Action No. 4:12-md-2382-HEA |
| | ) | |
| **THIS DOCUMENT APPLIES TO:** | ) | |
| | ) | |
| ALL ACTIONS. | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| | ) | |

**FIRST CONSOLIDATED AMENDED COMPLAINT**

COME NOW, Chad Venhaus, Justin Swires, Lauren Checki, Christopher Montalto, and Estaban Maravilla ("Plaintiffs"), individually and on behalf of all others similarly situated in the United States (the "Class"), and for their Consolidated Amended Complaint against Defendant Emerson Electric Company ("Defendant"), state as follows:

**INTRODUCTION**

1.      This is a class action on behalf of all persons and entities who purchased Defendant's RIDGID brand wet/dry vacuums ("RIDGID" or the "Product").

2.      RIDGID is marketed, advertised, and sold by Defendant with material misrepresentations regarding RIDGID's horsepower.

3.      In addition, RIDGID is marketed, advertised, and sold by Defendant with material misrepresentations regarding RIDGID's tank or drum capacity.

4.      The most important misrepresentations at issue, and which appear noticeably in Defendant's marketing of RIDGID and on the RIDGID product itself, are horsepower, drum capacity, and price.

1



5.      Defendant's website lists the horsepower and drum capacity as the top "Features" of RIDGID.[1]

6.      Defendant's representations of RIDGID's horsepower and drum capacity are false, deceptive and/or misleading because both are significantly overstated.

7.      Plaintiffs conducted independent tests on several RIDGID models.  The findings of these tests conclusively show Defendant's horsepower and drum capacity representations are false, deceptive and/or misleading.

8.      Plaintiffs' tests revealed that none of the tested RIDGIDs could obtain electrical power consumption consistent with Defendant's claimed "peak" horsepower ratings.

9.      Furthermore, Plaintiffs' tests showed RIDGIDs' functional drum capacities were significantly smaller than RIDGIDs' claimed drum capacities.

**JURISDICTION AND VENUE**

10.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(d) since Plaintiffs reside in multiple states, and the amount in controversy is in excess of $5,000,000, exclusive of interests and costs.

11.      Venue is proper in this Court because Defendant is headquartered in this District and has advertised, conducted business, and sold products in this District.

---

[1] http://www.ridgid.com/Tools/WD1270-12G-Vac/EN/index.htm (last visited September 16, 2013).

## THE PARTIES

12.     Chad Venhaus is a citizen of Missouri, residing in the City of St. Louis.  In 2012, Mr. Venhaus purchased Defendant's product model "RIDGID WD1450" wet/dry vacuum for personal, family or household purposes. Mr. Venhaus viewed and relied on Defendant's misrepresentations of "6.0 Peak HP" and 14 gallon drum volume when making his purchase. This reliance was to Mr. Venhaus' detriment, and he would not have purchased Defendant's product had he known the actual horsepower and tank capabilities.

13.     Justin Swires is an Illinois citizen residing in St. Clair County in the State of Illinois.  In November 2009, Mr. Swires purchased Defendant's product model "RIDGID WD12450" wet/dry vacuum for personal, family or household purposes.  Mr. Swires viewed and relied on Defendant's misrepresentations of "5.0 Peak HP" and 12 gallon drum volume when making his purchase.  This reliance was to Mr. Swires' detriment, and he would not have purchased Defendant's product had he known the actual horsepower and tank capabilities.

14.     Lauren Checki is a resident and citizen of Orleans Parish, Louisiana.  In March 2012, Ms. Checki purchased Defendant's product model "RIDGID WD1270" wet/dry vacuum for personal, family or household purposes. Ms. Checki viewed and relied on Defendant's misrepresentations of "5.0 Peak HP" and 12 gallon drum volume when making her purchase. This reliance was to Ms. Checki's detriment, and she would not have purchased Defendant's product had she known the actual horsepower and tank capabilities.

15.     Estaban Maravilla is a citizen of and resides in Antioch, Contra Costa County, California.  In December 2009, Mr. Maravilla purchased Defendant's product model "RIDGID WD12450" wet/dry vacuum for personal, family or household purposes.  Mr. Maravilla viewed and relied on Defendant's misrepresentations of "5.0 Peak HP" and 12 gallon drum volume

3

when making his purchase.  This reliance was to Mr. Maravilla's detriment, and he would not have purchased Defendant's product had he known the actual horsepower and tank capabilities.

16.     Christopher Montalto is a citizen of and resides in Rhinebeck, Dutchess County, New York. On October 1, 2011, Mr. Montalto purchased Defendant's product model "RIDGID WD1680" wet/dry vacuum for personal, family or household purposes.  Mr. Montalto viewed and relied on Defendant's misrepresentations of "6.5 Peak HP" and 16 gallon drum volume when making his purchase.  This reliance was to Mr. Montalto's detriment, and he would not have purchased Defendant's product had he known the actual horsepower and tank capabilities.

17.     Defendant Emerson is a Missouri corporation with its principal place of business at 8000 W. Florissant Ave, St. Louis, Missouri 63136.  Defendant is a diversified global manufacturing and technology company with a wide range of products and services in the industrial, commercial and consumer markets, including its tools and storage business.  One of Defendant's divisions is Emerson Professional Tools, which includes Emerson Tool Company and Ridge Tool Company (the RIDGID brand).  Emerson Tool Company is the manufacturer of a full line of Wet/Dry Vacuums sold under its RIDGID brand.  Ridge Tool Company is a wholly-owned subsidiary of Emerson Electric Company.

## FACTS

18.     A RIDGID vacuum is a heavy duty version of the standard household vacuum cleaner.  Its purportedly powerful motor is designed to vacuum and collect wet and dry materials into the cylinder via the attached hose.  It is designed to vacuum and collect solid and liquid matter that is relatively large – items heavier than a conventional household vacuum can collect.

## HORSEPOWER

19.     Horsepower ("HP") is an objective engineering term used to denote the power output of an electric motor[2], and it is a function of an electric motor's current, efficiency and voltage, as represented by the following equation, where "HP" is power in horsepower, "V" is the AC voltage input into the device, "I" is current in amps utilized by the motor and "Eff" is the efficiency of the motor:

$$HP = V \text{ x } I \text{ x } Eff / 746$$

20.     Peak HP is heavily emphasized in the advertising, packaging and marketing of RIDGID.  The HP of a particular model is stamped prominently on the RIDGID itself.

21.     RIDGID's HP and drum capacity are the key factors that determine the price that will be charged for the RIDGID.

22.     Defendant's RIDGID product line contains thirteen models with five distinct "peak" HP offerings:

        a.   6.5 HP;

        b.   6.0 HP;

        c.   5.0 HP;

        d.   3.5 HP;

        e.   2.5 HP.

23.     Defendant markets, advertises, and sells each RIDGID with a representation of the "Peak" HP of the individual Product creating a higher expectation of performance. Defendant does this through advertising, marketing materials and packaging that describe the

---

[2] Conversely, HP outlet of a non-electrical motor (such as an internal combustion engine) is represented by the following equation: where "HP" is power in horsepower, torque is measured in foot-pounds (lb/ft), and force is measured in rotations per minute (RPM): HP = torque (lb/ft) x force (RPM) / 5252.

Product and enumerate its HP and drum capacity, which the consumer sees prior to purchasing the Product and which is on the Product itself.

24.     However, the wet/dry vacuums owned by Plaintiffs and Class members produce materially less HP than Defendant represents and warrants resulting in less performance reasonably expected by Plaintiffs.  Although the various models of the Product sold by Defendant contain different HP representations, all of these representations materially overstate the true HP of the Product when measured or calculated through generally accepted scientific methods and equations.

25.     Plaintiffs' independent testing objectively determined that none of the tested RIDGID vacuum motors could demonstrate the claimed peak horsepower ratings during operation.

26.     Assuming an unattainable motor efficiency of 100%, it is an indisputable fact that the maximum power output from any possible motor connected to a 120 volt outlet with a standard circuit breaker is 3.22 HP.   Any consumer appliance with a claimed power output greater than this upper limit is simply unsafe and unreasonable.

27.     Plaintiffs' testing revealed the following maximum horsepower for three of Defendant's RIDGID models:

| Claimed HP | Actual HP |
|---|---|
| 2.5 HP | 0.870 HP |
| 5.0 HP | 1.447 HP |
| 6.0 HP | 1.455 HP |

28.     Obviously, these tests results reveal Defendant's HP ratings are grossly misrepresented and overstated.

29.     Regardless of Defendant's explanation for its claimed "Peak" HP ratings,

6

Defendant's use of the term "Peak" HP is objectively misleading in the context of a machine utilizing an electric motor of the type used in RIDGID.  Defendant's RIDGIDs are simply unable to perform or function at "Peak" HP during operation by a consumer.  As such, the claimed "Peak" HP rating Defendant represents for its RIDGIDs is materially overstated and incorrect, and Defendant's use of the term "Peak" HP to describe the functionality of its RIDGIDs is false and misleading with respect to its actual functionality.

30.     Because the RIDGID vacuums cannot reach the advertised HP or "Peak" HP while operating the vacuum, a reasonable consumer would be misled by Defendant's materially overstated HP representations that appear prominently on the RIDGID box, product, marketing materials, and Defendant's webpage.

31.     Defendant charges a premium for models of RIDGIDs that Defendant represents produce more HP than other models that cost less.

32.     However, Defendant's higher priced RIDGID models, including the models purchased by Plaintiffs, are not capable of, or are not reasonably capable of attaining, the increased HP represented by Defendant on the RIDGID and its packaging as compared to other lower priced models.

**TANK/DRUM CAPACITY**

33.     Defendant makes other representations and warranties about RIDGIDs, including but not limited to the RIDGIDs' drum size or drum capacity, that are untrue, false, inaccurate, or deceptive, and that constitute deception, fraud, false pretenses, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact.

34.     In fact, the RIDGIDs do not conform to drum capacity specifications represented to consumers and are false and misleading.

35.     Plaintiffs' testing demonstrated that all tested RIDGID vacuums are unable to demonstrate the rated drum volumes before the fluid level in the drum reached the bottom of the hose port and would begin to leak.

| Vacuum | Claimed Drum Volume (Gallons) | Functional Volume (Gallons) |
|--------|-------------------------------|-----------------------------|
| 2.5HP  | 6                             | 4.3                         |
| 5.0HP  | 12                            | 9.1                         |
| 6.0HP  | 14                            | 11.7                        |

36.     Only after the hose port was blocked off, removal of the engine, and each drum filled to its very top could the rated values be observed.  Because the drum size cannot hold the advertised volume while operating the vacuum, a reasonable consumer would be misled by Defendant's drum capacity ratings.

## CLASS ALLEGATIONS

37.     Plaintiffs bring this suit as representatives of a Class of all individuals pursuant to Rule 23 of the Federal Rules of Civil Procedure, who fall within the relevant statute of limitations period and purchased a RIDGID wet/dry vacuum ("the Class").  All consumers have claims and causes of action which are legally and factually in common with Plaintiffs in that they are all similarly situated, and Plaintiffs can serve as adequate class representatives for consumers in all states.

38.     The Class is believed to comprise thousands of persons nationwide, the individual joinder of which is impracticable.  The members of the Class are so numerous it is impracticable to bring all of them before the Court in this action.

39.     Excluded from the Class include: Defendant's legal representatives, officers, directors, assigns and successors, or any individual who has, or who at any time during the Class

8

period has had, a controlling interest in Emerson Electric Company; the Judge to whom this case is assigned and any member of the Judge's immediate family; persons or entities that purchased RIDGID wet/dry vacuums for resale; and all those who validly and timely opt-out of the certified Class.

40.    Plaintiffs reserve the right to amend or modify the definitions of the Class with greater specificity, further division into subclasses or to limit particular issues as discovery and orders of this Court warrant.

41.    Common questions of law and fact exist as to members of the Class and predominate over questions affecting only individual Class members.  Common legal and factual questions include, but are not limited to:

> a. Whether Defendant has made representations about the Products' horsepower, drum capacity and/or other features affecting performance, that are untrue, false, inaccurate or deceptive;
>
> b. Whether Defendant's conduct constitutes deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression or omission of any material fact in connection with the sale or advertisement of the products;
>
> c. Whether Defendant's conduct was unfair and/or deceptive;
>
> d. Whether Defendant violated state consumer protection laws;
>
> e. Whether Defendant's conduct was unjust;
>
> f. Whether Plaintiffs and class members have been damaged by Defendant's conduct; and
>
> g. Whether as a result of Defendant's conduct, Plaintiffs and Class

members are entitled to damages, restitution, equitable relief or other relief.

42.     As Plaintiffs purchased RIDGID wet/dry vacuums, and suffered a loss of money as a result, the claims of Plaintiffs are typical of the claims of the Class.  Members of the Class suffered the same type of injury and possess the same interests as Plaintiffs.

43.     Plaintiffs fairly and adequately represent and protect the interests of the Class. Plaintiffs do not have any interest antagonistic to those of the Class.   Plaintiffs retained competent and experienced counsel in the prosecution of this type of litigation.  The questions of law and fact common to the members of the Class overwhelmingly predominated over any questions affecting only individual members of the Class.

44.     The class action is superior to other available methods for the fair and efficient adjudication of this controversy because members of the Class number in the thousands and individual joinder is impracticable.  The expenses and burden of individual litigation would make it impracticable or impossible for proposed members of the Class to prosecute their claims individually.  Trial of Plaintiffs' claims is manageable.

45.     For these reasons, this case is maintainable as a class action pursuant to Federal Rule of Civil Procedure 23 since the questions of law or fact common to members of the Class predominate over any individual questions affecting only individual members, and a class action is superior to other available methods.  Additionally, this suit is maintainable under Federal Rule of Civil Procedure 23 as Defendant has acted or refused to act on grounds applicable to the Class, thereby making appropriate final injunctive relief to the Class in their entirety.

## COUNT I – DAMAGES FOR VIOLATION OF MO. REV. STAT. § 407.010 *ET SEQ*.
## (THE "MISSOURI MERCHANDISING PRACTICES ACT" OR "MMPA")
## (ON BEHALF OF THE NATIONWIDE CLASS)

46.     Plaintiffs incorporate by reference all other paragraphs of this complaint as if fully set forth herein.

47.     Plaintiffs bring this claim on behalf of the Nationwide Class.

48.     Mo. Rev. Stat. § 407.020 provides the following:

> The act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce . . . in or from the state of Missouri, is declared to be an unlawful practice.  . . . Any act, use or employment declared unlawful by this subsection violates this subsection whether committed before, during or after the sale advertisement or solicitation.

49.     In connection with the sale and/or advertisement of the RIDGIDs, Defendant made representations about the RIDGIDs horsepower that are untrue, false, inaccurate or deceptive.  Defendants knew that representations concerning horsepower would be reasonably equated to performance.  As such, Defendant's conduct constitutes deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression or omission of any material fact.

50.     At all relevant times, Defendant's sales and/or distribution of the RIDGIDs was a "sale" as defined by Mo. Rev. Stat. § 407.010 because such sales and/or distribution constituted a sale, lease, offer for sale or lease, or attempt to sell or lease merchandise for cash or on credit.

51.     At all relevant times, Defendant's manufacturing, marketing, advertising, sales and/or distribution of the RIDGIDs was an "advertisement" as defined by Mo. Rev. Stat. § 407.010 because such manufacturing, marketing, advertising, sales and/or distribution constituted an attempt by publication, dissemination, solicitation, circulation, or any other means to induce, directly or indirectly, any person to enter into any obligation or acquire any title or

11

interest in any merchandise.

52.     Defendant uniformly misrepresented to Plaintiffs and the Class by means of its advertising, marketing, and other promotional materials, and on the RIDGID's labeling and packaging, the RIDGID's true nature and quality because, among other things, the RIDGID does not actually conform to the representations of horsepower and tank capacity made by Defendant.

53.     Defendant has violated the MMPA by engaging in practices that constitute deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression or omission of any material fact in connection with the sale or advertisement of the RIDGIDs.

54.     As a direct and proximate result of Defendant's improper conduct, Plaintiffs and Class have suffered damages and ascertainable losses, in amounts to be determined at trial, by paying more for the RIDGIDs than they would have and/or by purchasing the RIDGID when they would not have if the horsepower and tank capacity of the RIDGID had not been misrepresented.

WHEREFORE, Plaintiffs and Class pray for the relief requested in the Request for Relief set forth below in this Complaint.

## COUNT II – BREACH OF EXPRESS WARRANTY
### (ON BEHALF OF THE NATIONWIDE CLASS)

55.     Plaintiffs incorporate by reference all other paragraphs of this complaint as if fully set forth herein.

56.     The Plaintiffs bring this claim individually and on behalf of the other Class members of the Class.

57.     The Plaintiffs, and each of the other members of the Class formed a contract with Defendant at the time they purchased Defendant's RIGID Products. The terms of that contract

include the promises and affirmations of fact Defendant makes on RIGID's packaging and labeling and through marketing and advertising, including Defendant's promise that its RIGID Products horsepower and drum capacity are true and accurate representations, as more fully described above. This marketing and advertising constitute express warranties and became part of the basis of the bargain, and are part of the standardized contract between each of the Plaintiffs and each of the other members of the Class and Defendant.

58.    In addition or in the alternative, Defendant made each of its above-described representations to induce Plaintiffs and each of the other members of the Class, to rely on such representations concerning the purported benefits and efficacy of its RIGID Products as a material factor in their decision(s) to purchase those RIGID Products.

59.    Defendant expressly warranted in its advertising, marketing, and other promotional materials, and on the RIDGID's labeling and packaging that the vacuums had certain peak horsepower and had a capacity of a certain number of gallons, and those statements are untrue.

60.    All conditions precedent to Defendant's liability under this contract have been performed by the Plaintiffs and each of the members of the Class, when they purchased Defendant's RIGID Products. At all times relevant to this action, Defendant has breached its express warranties about its RIGID Products because its Products do not conform to the representations of horsepower and drum capacity, in violation of state express warranty laws.

61.    As a result of Defendant's breaches of express warranty, the Plaintiffs and each of the other members of the Class were damaged in the amount of the purchase price they paid for Defendant's RIGID Products, in an aggregate amount to be proven at trial.

62.     The Plaintiffs, on behalf of themselves and the other members of the Class, demand judgment against Defendant for compensatory damages for themselves and each of the other Class members, as well as attorneys' fees, interest and costs.

63.     Within a reasonable time after the Plaintiffs and the Class members knew or should have known of such breach, the Plaintiffs and other Class members placed Defendant on notice thereof.

WHEREFORE, Plaintiffs and Class pray for relief request in the Request for Relief set forth below this Complaint.

## COUNT III – BREACH OF IMPLIED WARRANTY
### (ON BEHALF OF THE NATIONWIDE CLASS)

64.     Plaintiffs incorporate by reference all other paragraphs of this complaint as if fully set forth herein.

65.     This claim alleges breaches of implied warranty under UCC § 2-314 as enacted, in whole or in substantial part.

66.     The Plaintiffs bring this claim individually and on behalf of the other Class members of the Class.

67.     At all times relevant hereto, Defendant was a seller of its RIGID Products.

68.     By placing its RIGID Products in the stream of commerce, Defendant impliedly warranted that its Products were of merchantable quality in that it would pass without objection in the trade, was fit for the ordinary purposes for which it was to be used, and conformed to the promises or affirmations of fact made on the container or label or as otherwise promoted, marketed and/or advertised.

69.     Defendant breached the implied warranty of merchantability at the time of sale because the RIGID Products would not pass without objection in the trade, were not fit for the

14

ordinary purposes for which they were to be used and did not conform to the promises or affirmations of fact made on the container or label or as otherwise promoted, marketed and/or advertised.

70.    At all times relevant to this action, Defendant has breached its implied warranty of merchantability regarding its RIGID Products in violation of state implied warranty laws.

71.    When required, the Plaintiffs and the Class members are in privity with Defendant because Defendant's sale of its RIGID Products is either direct or through authorized sellers. Upon information and belief, purchase through authorized sellers is sufficient to create such privity because, inter alia, such authorized sellers are Defendant's agents for the purpose of the sale of Defendant's RIGID Products.

72.    As a result of the breach of implied warranties, the Plaintiffs and the Class members have been directly and proximately damaged in the amount of the price they paid for the Products in an aggregate amount to be proven at trial.

73.    Within a reasonable time after they knew or should have known of such breach, the Plaintiffs, on behalf of themselves and Class members placed Defendant on notice thereof.

WHEREFORE, Plaintiffs and Class pray for relief request in the Request for Relief set forth below this Complaint.

## COUNT IV– UNJUST ENRICHMENT
### (ON BEHALF OF THE NATIONWIDE CLASS)

74.    Plaintiffs incorporate by reference all preceding paragraphs of this Complaint as if fully set forth herein.

75.    Plaintiffs and Class members conferred upon Defendant benefits that were non-gratuitous and constitute unjust takings.

76.    Defendant accepted or retained the benefits conferred by Plaintiffs and Class

despite Defendant's deceptive advertising, material misrepresentations, and omissions of material fact and/or fraudulent conduct with regard to the quality and performance of RIDGIDs.

77.     Retaining the benefits conferred upon Defendant by Plaintiffs and Class under these circumstances makes Defendant's retention of the benefits unjust and inequitable.

78.     As a result of the foregoing, Plaintiffs and Class suffered damages, as set forth more fully above.

79.     Because Defendant's retention of the benefits conferred by Plaintiffs and Class is unjust and inequitable, Defendant must pay restitution in a manner established by this Court.

WHEREFORE, Plaintiffs and Class pray for the relief requested in the Request for Relief set forth below in this Complaint.

### COUNT V – VIOLATION OF CONSUMER PROTECTION LAWS
### (ON BEHALF OF CONSUMERS OF THE FOLLOWING STATE SUBCLASSES)

80.     Plaintiffs incorporate by reference all preceding paragraphs of this Complaint as if fully set forth herein.

81.     Plaintiffs bring this claim individually and on behalf of the members of the Class against Defendant.

82.     Defendant placed the identical vacuums into the stream of commerce of every one of the fifty States and the District of Columbia, utilizing identical misrepresentations relating to the horsepower, "peak" horsepower and tank capacity of these devices.

83.     By mislabeling and selling the Product as having qualities, benefits and characteristics which they do not have, Defendant has engaged in unfair competition or unlawful, unfair, misleading, unconscionable, or deceptive acts in violation of the state consumer statutes listed below.

84.     Defendant has engaged in unfair competition, unfair or deceptive acts or practices

and false advertising in violation of CAL.BUS. & PROF CODE § 17200, *et. seq.*, § 17500, *et seq.*, and CAL. CIV. CODE § 1750, *et. seq*.

85.     Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of 815 ILL. COMP. STAT. 505/1, *et seq*.

86.     Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of LA. REV. STAT. § 51:1404, *et seq.*

87.     Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of MO. REV. STAT. §407.020, *et seq.*

88.     Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of N.Y. GEN. BUS. LAW § 349, *et seq.*

89.     The acts, practices, misrepresentations and omissions by Defendant described above, and Defendant's dissemination of deceptive and misleading advertising and marketing materials in connection therewith, occurring in the course of conduct involving trade or commerce, constitute unfair methods of competition and unfair or deceptive acts or practices within the meaning of each of the above-enumerated statutes, because each of these statutes generally prohibit the sale of products which are prohibited by law.  Defendant violated each of these statutes by making illegal sales and also by representing RIDGIDs as having "peak" horsepower and tank capacity they do not have.

90.     Plaintiffs and Class members suffered a loss of money as a result of Defendant's misrepresentations because: (a) they would not have purchased RIDGIDs on the same terms if the true facts concerning their horsepower and tank capacity had been known; (b) they paid an unfair price premium due to the misrepresentations concerning horsepower and tank capacity; and (c) the vacuums did not perform as promised.

91.     As a result of the foregoing, Plaintiffs and Class have suffered damages, as set forth more fully above.

WHEREFORE, Plaintiffs and Class pray for relief request in the Request for Relief set forth below this Complaint.

## COUNT VI – BREACH OF IMPLIED WARRANTY – REDHIBITION
### (ON BEHALF OF THE LOUISIANA SUBCLASS)

92.     Plaintiffs incorporate by reference all preceding paragraphs of this Complaint as if fully set forth herein.

93.     Plaintiffs and class members are "buyers" and Defendant is the "manufacturer" of the RIDGID under La. C.C. Art. 2520, *et seq*.

94.     Under Louisiana law, the manufacturer warrants the buyer against redhibitory defects or vices in the things sold.  La. C.C.P. Art. 2520.

95.     Under Louisiana Civil Code Article 2520, a defect is redhibitory in two situations: (1) When the defect "renders the thing useless, or its use so inconvenient" that it has to be presumed that the buyer would not have bought the thing had he known of the defect or (2) when, "without rendering the thing totally useless," the defect diminishes the product's usefulness or its value such that it must be presumed that the buyer would still have bought it but for a lesser price.

96.     Had Plaintiffs and Class members known of that RIDGIDs have materially overstated horsepower, they would not have purchased the RIDGIDs at all, or at least not for the price paid, and thus the defects in the RIDGID products, as described above, meet the definition of a redhibitory defect.

97.     In particular, RIDGIDs possesses a redhibitory defect because the Defendant has materially overstated horsepower the for its RIDGIDs, and Defendant's use of the term "Peak"

horsepower to describe the functionality of its RIDGIDs is false and misleading with respect to its actual functionality in a normal consumer setting.

98.     At the time of the sale of the RIDGIDs to Plaintiffs and Class Members, Defendant had actual or constructive notice of the materially overstated horsepower of the RIDGID and its component parts, because numerous complaints were made to Defendant.

99.     Defendant is a "manufacturer" of the RIDGID under La. C.C. Art. 2520, *et seq*. As a manufacturer, Defendant is deemed to have knowledge of any redhibitory defect in any product it sells.  La. C.C.P. Art. 2545.

100.     A defendant with knowledge of a redhibitory defect "is liable to the buyer for the return of the price with interest from the time it was paid, for the reimbursement of the reasonable expenses occasioned by the sale and those incurred for the preservation of the thing, and also for damages and reasonable attorney fees." La. C.C.P. Art. 2545.

WHEREFORE, Plaintiffs and Class pray for relief request in the Request for Relief set forth below this Complaint.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, seek judgment against Defendant, as follows:

A.     For an order certifying the national Class pursuant to Federal Rule of Civil Procedure 23 and naming Plaintiffs as Class Representatives and their attorneys as Class Counsel to represent the Class members;

B.     For an order finding in favor of Plaintiffs and the Class on all counts asserted herein;

C.     For an order declaring Defendant's conduct violates the statutes referenced

herein;

D.      For awarding actual, compensatory, consequential and/or incidental damages to Plaintiffs and members of the proposed Class;

E.      For restitution to Plaintiffs and members of the proposed Class;

F.      Awarding declaratory and injunctive relief as permitted by law or equity including a preliminary and permanent injunction enjoining Defendant from continuing the unlawful practices as set forth herein and directing Defendant to identify, with Court supervision, victims of their conduct and pay them restitution and disgorgement of all monies acquired by Defendant by means of any act or practice declared by this Court to be wrongful;

G.      Awarding punitive damages in an amount to be determined at trial;

H.      Awarding pre-judgment interest;

I.      Awarding post-judgment interest;

J.      Awarding attorneys' fees and costs;

K.      Providing such further relief as may be fair and reasonable.

## DEMAND FOR TRIAL BY JURY

Plaintiffs hereby demand a trial by jury of all issues so triable.

Respectfully Submitted,

**THE SIMON LAW FIRM, P.C.**

By: /s/ John G. Simon
     John G. Simon, # 35231MO
     Anthony G. Simon, # 38745MO
     Ryan A. Keane, # 62112MO
     800 Market Street, Suite 1700
     St. Louis, Missouri 63101
     P. 314.241.2929
     F. 314.241.2029

jsimon@simonlawpc.com
rkeane@simonlawpc.com
     and
**HOLLAND GROVES SCHNELLER**
**& STOLZE, LLC**
Eric D. Holland #39935MO
R. Seth Crompton #57448MO
300 North Tucker Boulevard, Suite 801
St. Louis, Missouri 63101
Telephone: (314) 241-8111
Facsimile: (314) 241-5554
eholland@allfela.com
scrompton@allfela.com

*Interim Co-Lead Counsel*

Richard J. Arsenault
**NEBLETT, BEARD & ARSENAULT**
2220 Bonaventure Court
P.O. Box 1190
Alexandria, Louisiana 71309
Telephone: (216) 621-8484
Facsimile: (216)771-1632
rarsenault@nbalawfirm.com

Charles E. Schaffer
**LEVIN, FISHBEIN, SEDRAN**
**& BERMAN**
510 Walnut Street, Suite 500
Philadelphia, Pennsylvania 19106
Telephone: (215) 592-1500
Facsimile: (215) 592-4663
cschaffer@lfsblaw.com

John R. Climaco
**CLIMACO, WILCOX, PECA,**
**TARANTINO & GAROFOLI CO., L.P.A.**
55 Public Square, Suite 1950
Cleveland, Ohio 44113
Telephone: (216) 621-8484
Facsimile: (216) 771-1632
jrclim@climacolaw.com

Jordan L. Chaikin
**PARKER WAICHMAN LLP**
3301 Bonita Beach Road, Suite 101
Bonita Springs, Florida 34134
Telephone: (239) 390-1000
Facsimile: (239) 390-0055
jchaikin@yourlawyer.com

*Executive Committee*

Reginald Terrell, Esq.
**THE TERRELL LAW GROUP**
Post Office Box 13315, PMB #148
Oakland, California 94661
Telephone: (510) 237-9700
Facsimile: (510) 237-4616

*Counsel for Plaintiff*

21

## **CERTIFICATE OF SERVICE**

I certify that a true copy of the foregoing was served electronically upon all counsel of record via the CM/ECF system on this 16th day of September, 2013.

/s/ John G. Simon_____