UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

IN RE: EMERSON ELECTRIC CO.   )
WET/DRY VAC MARKETING AND   )
SALES LITIGATION,   )    MDL No. 2382
  )
  )    Case No. 4:12MD2382  HEA
  )
THIS DOCUMENT APPLIES TO:   )
  )
ALL ACTIONS   )

## OPINION, MEMORANDUM AND ORDER

This matter is before the court on the named Plaintiffs' motion to certify a class, [Doc. No. 115].  This is an action for violations of the Missouri Merchandising Practices Act, Mo.Rev.Stat. § 1407.010, *et seq.,* breach of express warranty, breach of implied warranty, unjust enrichment, violations of consumer protection laws in various states for subclasses and breach of implied warranty-redhibition on behalf of the Louisiana subclass.

### Facts and Background

Relevant to the class certification issue are plaintiffs' allegations that defendant misled the public, including plaintiffs, into purchasing or paying more for defendant's product, the RIGID wet/dry vacuum, that it did not perform as expressly and impliedly marketed through a national and uniform advertising campaign.  The marketing was based on the stated wet/dry vacuum's "Peak HP."

Plaintiffs allege the vacuum cannot attain the advertised horsepower in a standard, household electrical wall outlet.

The plaintiffs now seek certification under Missouri law, or alternatively with subclasses for the different home states of the various plaintiffs. This case presents the classic case for treatment as a class action: that is, the commonality linking the class members is the dispositive question in the lawsuit. The issue of liability predominates over whatever individual inquiries will have to be performed to determine damages.

## Discussion

The Court must initially determine what state's law applies in order to ascertain whether the class certification requirements have been met. "District courts sitting in diversity apply the choice-of-law rules of the state where they sit." *Winter v. Novartis Pharm. Corp.*, 739 F.3d 405, 410 (8th Cir. 2014). Missouri follows the "most significant relationship" test from the Restatement (Second) of Conflicts of Laws § 145 for resolving choice-of-law questions. *Zafer Chiropractic & Sports Injuries, P.A. v. Hermann*, 501 S.W.3d 545, 550 (**Mo**. Ct. App. 2016). The factors to be considered under § 145 are: (1) the place where the injury occurred, (2) the place where the conduct causing the injury occurred, (3) the domicil, residence, nationality, place of incorporation and place of business of the parties, and (4) the place where the relationship, if any, between the parties is

centered. *Am. Guarantee & Liab. Ins. Co. v. U.S. Fid. & Guar. Co.,* 668 F.3d 991, 996 (8th Cir. 2012) (*citing Thompson by Thompson v. Crawford*, 833 S.W.2d 868, 870 (**Mo**. 1992)). The most important contact is the center of the parties' relationship. *See* Restatement (Second) of Conflict of Laws § 221 cmt. on subsec. (2).

Plaintiffs seek to have this action decided pursuant to Missouri Law, except with respect to their redhibition claim under Louisiana statutes, where plaintiffs seek to certify a sub-class. Defendant argues that the law of the states represented by the individual plaintiffs applies.

The analysis is not complicated here. The Court will consider each of the Restatement factors. With respect to the place where the injury occurred, the Court finds this factor in favor of the laws of the separate states. Plaintiffs claim they have been injured by the representation of peak horsepower. This alleged injury necessarily occurred in the plaintiffs' home states where they purchased the wet/dry vacs. This factor favors application of the various state laws where plaintiffs reside.

Plaintiffs claim that the conduct causing the injury was defendant's advertising a peak horsepower that was not accurate. The development and implementation of the advertising campaign occurred at defendant's place of

business, which is in St. Louis, Missouri. Thus, the conduct causing the injury favors application of Missouri law.

The domicils, residences, place of incorporation and place of business of the defendant are in different states, thereby rendering this factor essentially neutral.

Regarding the place where the relationship, if any, between the parties is centered, the most important contact, this factor favors application of Missouri law since the central issue of the case, whether the advertisement campaign is misleading, originated in Missouri.

Particularly in relation to the Missouri Merchandising Practices Act (MMPA), Defendant argues that *Perras v. H & R Block*, 789 F.3d 914 (8th Cir. 2015) resolves the issue against application of the MMPA.

The MMPA makes unlawful "any deception, fraud, false pretense, false promise, misrepresentation, [or] unfair practice ... in connection with the sale or advertisement of any merchandise in trade or commerce ... in or from the state of Missouri." Mo. Stat. § 407.020.1. The law allows a private civil action to be filed by "[a]ny person who purchases or leases merchandise primarily for personal, family or household purposes and thereby suffers an ascertainable loss of money or property ... as a result of the use or employment by another person of a method, act or practice declared unlawful" by the MMPA. Mo. Stat. § 407.025.1. That civil suit may be brought "in either the circuit court of the county in which the seller or lessor resides or in which the transaction complained of took place." *Id.* The MMPA also expressly allows for a class-action suit, under which the plaintiffs may recover damages, an injunction, or other equitable relief. *Id.* § 407.025.2. Section 407.025.3 discusses the methods and requirements for certifying a class action, which mirror those listed in Fed.R.Civ.P. 23.

To decide whether Perras may bring the class-action claims in this case under the MMPA, and thus whether common questions of law

predominate over individual questions, we must determine if the tax-return services performed and paid for outside of Missouri nonetheless constitute trade or commerce "in or from the state of Missouri." Mo. Stat. § 407.020. For the answer to that question of state law, we look to the decisions of the state supreme court. *See Ashley County, Ark. v. Pfizer, Inc.,* 552 F.3d 659, 665 (8th Cir.2009). If the Supreme Court of Missouri has not decided the issue, we look to analogous state-court decisions and precedent to predict how that Court would decide the issue. *Id.*

The Supreme Court of Missouri has described the MMPA's language regarding unlawful merchandising as "unrestricted, all-encompassing and exceedingly broad." *Ports Petroleum Co. of Ohio v. Nixon,* 37 S.W.3d 237, 240 (Mo. banc 2001). That court, however, has not decided whether the language is broad enough to cover transactions taking place outside of Missouri. The Missouri Court of Appeals has concluded that the MMPA may reach consumers in states other than Missouri who succumb to fraudulent advertising or deceptive practices. *State ex rel. Nixon v. Estes,* 108 S.W.3d 795, 801 (Mo.Ct.App.2003). In *Estes,* the fraudulent business misleadingly advertised vending machines and fraudulently promised tens of thousands of dollars in profit. *Id.* at 796–97. But that business had numerous ties to Missouri: It was in Missouri that the defendant had operated his fraudulent business, received signed sales agreements and wire transfers from the customers, held the ill-gotten gains in Missouri bank accounts, and maintained company offices from which he communicated with customers. *Id.* at 801. Those facts, the court ruled, showed that Estes had advertised and sold the fraudulent machines "in trade or commerce ... in or from the state of Missouri." *Id.* at 800–01 (quoting Mo. Stat. § 407.020.1). Thus, the claims of those out-of-state plaintiffs could be brought under the MMPA. *Id.* at 801.

In our case, there are no ties between the allegedly fraudulent transactions and Missouri. Though true, as the district court noted, H & R's headquarters are located in Missouri; and there, it designed and implemented the compliance fee. But every part of the transactions—the activity for which the class action seeks relief—occurred in each class member's home state. In those states, each class member contacted and communicated with a local H & R representative at a local H & R office, contracted for tax-return services, and paid the allegedly deceptive compliance fee. And it was in each class member's state that H & R had displayed the purportedly fraudulent "materials" explaining the compliance fee. The evidence each class member would proffer to support her claim, therefore, would be

specific to her experience in her state at her local H & R office. There is no other connection between the claims in the class action and Missouri; the acts of commerce that Perras grieves did not occur in, or originate from, the State of Missouri. *See* Mo. Stat. § 407.020.1.

We do not think this conclusion is inconsistent with the Supreme Court of Missouri's generous description of the MMPA. *See Ports Petroleum Co.,* 37 S.W.3d at 240. Though the statute may cover "every practice imaginable and every unfairness to whatever degree," *id.,* that practice still must involve trade or commerce "in or from the state of Missouri." *Estes,* 108 S.W.3d at 801; *see* Mo. Stat. § 407.020.1. This lawsuit does not challenge the mere fact of creating the compliance fee—the only action that actually occurred in Missouri. Perras would have no standing to bring a claim for relief against H & R solely for creating the fee. *See Raines v. Byrd,* 521 U.S. 811, 819–20, 117 S.Ct. 2312, 138 L.Ed.2d 849 (1997) (noting that, to meet standing requirements of Article III, plaintiff must allege a personal injury redressable by relief requested). Instead, Perras seeks relief for H & R's charging of the fee to consumers, transactions that took place outside of Missouri between representatives of H & R located outside of Missouri and consumers who reside outside of Missouri.

Accordingly, we believe the Supreme Court of Missouri would conclude that the MMPA does not cover the out-of-state transactions in this case. The law applicable to each class member would be the consumer-protection statute of that member's state. Thus, questions of law common to the class members do not predominate over any individual questions of law. *See* Fed.R.Civ.P. 23(b)(3). The district court did not abuse its discretion in concluding that the class action does not meet the predominance requirement. With that conclusion, we need not decide whether the class action would meet the superiority requirement in Rule 23(b)(3). *See Avritt,* 615 F.3d at 1035 n. 6.

*Perras v. H & R Block*, 789 F.3d 914, 917–18 (8th Cir. 2015)(footnotes omitted).

The facts presented in this case clearly fall within the reasoning of *Estes*, as recognized by the Eighth Circuit in *Perras*. In *Perras*, the Plaintiffs had personal contact with H & R Block representatives in their home states. Although the

development of the compliance fee occurred in Missouri, the most salient factor, the relationship between the parties, occurred solely in the plaintiffs' home states. Thus, the relationship between the parties was specifically and solely developed and fulfilled in different states. Contrarily, in this action, it is the advertising campaign itself that caused the alleged injury, as opposed to the payment of the fee itself. The *Perras* Court recognized this particular type of injury when it distinguished *Perras* from Estes. Indeed, the E*stes* specifically found that this type of sale or advertisement of any merchandise in trade or commerce in or from the state of Missouri falls within the broad scope of the MMPA Estes, 108 S.W.3d at 800. The Court will apply Missouri law to the issues in this case.

Class certification is governed by Federal Rule of Civil Procedure 23. Rule 23 requires that an action satisfy all four prerequisites of Rule 23(a) and at least one of the provisions of Rule 23(b). *Comcast Corp. v. Behrend*, —— U.S. ——, 133 S.Ct. 1426, 1432 (2013). Pursuant to Rule 23(a), the party seeking certification must demonstrate that the proposed class satisfies the requirements of numerosity, commonality, typicality, and adequate representation, to ensure that any class claims are limited "to those fairly encompassed by the named plaintiff's claims." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 156 (1982) (internal quotations and citations omitted). Rule 23(b)(3), under which plaintiffs seek certification, requires that the Court find that "questions of law or fact common to class members

predominate over any questions affecting only individual members," and that a class action is the "superior" method of adjudication of the controversy.

Before analyzing whether the requirements set forth in Rule 23 have been met, the Court will address the parties' arguments relating to what have sometimes been referred to as the "implicit requirements" of the courts' Rule 23 analysis: ascertainability and standing. With respect to ascertainability, the Eighth Circuit has not "outlined a requirement of ascertainability," or treated it as a "separate, preliminary requirement." *Sandusky Wellness Ctr., LLC v. Medtox Sci., Inc.,* 821 F.3d 992, 995–996 (8th Cir. 2016). Rather, in noting that "[m]ost of the other circuit courts of appeals have recognized that Rule 23 contains an implicit threshold requirement that the members of a proposed class be readily identifiable...an ascertainability requirement," the Eighth Circuit has determined that the certifying court must find that the class sought to be represented "must be adequately defined and clearly ascertainable" in connection with a court's Rule 23 analysis. *Ibid.* (internal quotation marks omitted) (collecting cases). With respect to the issue of standing, the Eighth Circuit has held that the "irreducible constitutional minimum of standing [that] requires a showing of injury in fact to the plaintiff that is fairly traceable to the challenged action of the defendant, and likely to be redressed by a favorable decision" applies to class actions. *Avritt v. Reliastar Life Ins. Co*., 615 F.3d 1023, 1034 (8th Cir. 2010).

"Rule 23 does not set forth a mere pleading standard." *Wal–Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Instead, a plaintiff "must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." *Ibid.* (emphasis in original). The preponderance of the evidence standard applies to evidence proffered to establish the requirements of Rule 23. *Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc*., 546 F.3d 196, 202 (2d Cir. 2008).

"Rigorous analysis" is necessary to ensure that the plaintiffs satisfied all Rule 23 requirements for certifying a class. *Powers v. Credit Mgmt. Servs*., 776 F.3d 567, 570 (8th Cir.2015). This rigorous analysis often results in some overlap with the merits of the plaintiff's claim. *Wal–Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011).

"The class action is 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'" *Id.* at 2550 (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700–701 (1979)). Under Fed. R. Civ. P. 23, a class action may be maintained if the suit satisfies the criteria set forth in subdivision (a)—numerosity, commonality, typicality, and adequacy of representation—and it also must fit into one of three categories described in subdivision (b). *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559

U.S. 393, 397 (2010) (noting that "[b]y its terms this creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action"); Fed. R. Civ. P. 23. "A party seeking class certification must ... be prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact, etc." *Dukes*, 338 U.S. at 350.

With respect to numerosity, the Eighth Circuit has not established a specific rule as to the necessary size of a class, but it has directed courts to consider several factors in determining whether joinder is feasible: the number of persons in the class, the nature of the action, the size of the individual claims, the inconvenience of trying individual suits, and any other factor relevant to the practicability of joining all the class members. *Emanuel v. Marsh*, 828 F.2d 438, 444 (8th Cir.1987), *vacated on other grounds*, 487 U.S. 1229 (1988).

To demonstrate typicality, the putative class must show that the named parties' claims are typical of the class. Fed. R. Civ. P. 23(a)(3). The burden on the plaintiff to prove typicality is "fairly easily met so long as other class members have claims similar to the named plaintiff." *Alpern v. UtiliCorp United, Inc.*, 84 F.3d 1525, 1540 (8th Cir.1996). The presence of a common legal theory, however, does not establish typicality when proof of a violation requires an individualized inquiry. *Elizabeth M. v. Montenez*, 458 F.3d 779, 787 (8th Cir.2006) (involving a

substantive due process claim that invariably "demands an exact analysis of circumstances before any abuse of power is condemned.").

"Commonality requires a showing that class members 'have suffered the same injury.'" *Powers*, 776 F.3d at 571 (quoting *General Tel. Co. v. Falcon*, 457 U.S. 147, 157 (1982)). "However, '[w]hat matters to class certification ... is not the raising of common 'questions'—even in droves—but, rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation.'" *Id.* (quoting *Dukes*, 338 U.S. at 350. (quotation omitted; emphasis in original)); *see Comcast Corp. v. Behrend*, 569 U.S 27, 34 (2013) (allowing variation in damages unless "individual damage calculations ... overwhelm questions common to the class"); *Bouaphakeo v. Tyson Foods, Inc*., 765 F.3d 791, 797 (8th Cir.2014), *cert. granted*, ––– U.S. ––––, 135 S.Ct. 2806 (2015); *DeBoer v. Mellon Mortg. Co*., 64 F.3d 1171, 1174 (8th Cir.1995) ("The fact that individuals ... will have ... claims of differing strengths does not impact on the commonality of the class"). In certain contexts "[t]he commonality and typicality requirements of Rule 23(a) tend to merge." *Dukes*, 131 S.Ct. at 2551 and n. 5 (noting that commonality and typicality "serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence").

Further, the named plaintiffs must fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a)(4). The adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997). The inquiry also factors in competency and conflicts of class counsel. *Id.* at 626 n. 20. "[A] class representative must be part of the class and 'possess the same interest and suffer the same injury' as the class members." *Id.* at 625–26 (quoting *East Texas Motor Freight Sys., Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977)).

If the plaintiffs meet the requirements under Rule 23(a), they must then establish that their class fits into one of the provisions of Rule 23(b) in order to be certified. Fed. R. Civ. P. 23(b). The Supreme Court has explicitly determined that "individualized monetary claims belong in Rule 23(b)(3)." *Dukes*, 338 U.S. at 362. For the plaintiffs to prevail on a motion for certification under Rule 23(b)(3), they must demonstrate the existence of superiority and predominance. Fed. R. Civ. P. 23(b)(3).

Rule 23(b)(3) does not require a plaintiff seeking class certification to prove that each element of his or her claim is susceptible to class-wide proof. *Amgen Inc. v. Connecticut Ret. Plans and Trust Funds*, ——U.S. ——, 133 S.Ct. 1184 (2013). Rather, all that is required is that a class plaintiff show that "common questions 'predominate.'" *Id.* (quoting Fed. R. Civ. P. 23(b)(3)). The predominance inquiry

requires an analysis of whether a prima facie showing of liability can be proved by common evidence or whether this showing varies from member to member. *Halvorson v. Auto–Owners Ins. Co.*, 718 F.3d 773, 779 (8th Cir.2013) (explaining that the lack of an individualized injury would impact predominance and mean that "individual questions necessary to determine breach of contract and bad faith" would include "individual inquiries" that would "predominate over" whether the defendant's claim-processing methodologies were reasonable.). For the purposes of class certification, however, plaintiffs cannot "identif[y] damages that are not the result of the wrong." *Comcast Corp. v. Behrend*, —— U.S. ——, 133 S.Ct. 1426, 1434 (2013). That is, "the plaintiffs must be able to show that their damages stemmed from the defendant's actions that created the legal liability." *Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 514 (9th Cir.2013) ("[T]he presence of individualized damages cannot, by itself, defeat class certification under Rule 23(b)(3).").

"Predominance is a test readily met in certain cases alleging consumer … fraud…." *Amchem Prods., Inc.*, 521 U.S. at 625, 117 S.Ct. 2231. "[C]ommon questions can predominate if a 'common nucleus of operative facts and issues' underlies the claims brought by the proposed class." *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 815 (7th Cir.2012) (quoting *In re Nassau County Strip Search Cases*, 461 F.3d 219, 228 (2d Cir.2006)). "If the issues of liability are

genuinely common issues, and the damages of individual class members can be readily determined in individual hearings, in settlement negotiations, or by creation of subclasses, the fact that damages are not identical across all class members should not preclude class certification." *Butler v. Sears, Roebuck & Co.*, 727 F.3d 796, 801 (7th Cir.2013), *cert. denied*, —— U.S. ——, 134 S.Ct. 1277 (2014); *see Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 514 (9th Cir.2013).

The superiority requirement asks whether the class action is the best available method for resolving the controversy. *See* Fed. R. Civ. P. 23(b)(3). A significant consideration in evaluating superiority is whether the claims are too small to be litigated individually. *Amchem Prods., Inc.*, 521 U.S. at 617; *Mace v. Van Ru Credit Corp*., 109 F.3d 338, 344 (7th Cir.1997) (stating "[t]he policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights").

As a threshold matter, the Court finds that Plaintiffs have established that the members of the putative class are ascertainable and have standing to bring these claims. Plaintiffs have alleged that they purchased the RIGID wet/dry vacuum and that they would not have purchased it had they known that the advertised peak horsepower was not capable of being attained through a standard, household outlet. They have alleged an injury in fact, *i.e*., overpaying for the wet/dry vac, thus

satisfying the requirements for standing. Likewise, the class members are ascertainable. Although defendant argues that the members of the class cannot be identified because it did not sell directly to the consuming public, the Court agrees with plaintiff that defendant's knowledge does not determine whether the identity of the class can be ascertained. "Given the objective criteria in the definition, it is more likely than not that the purchasers of the [RIGID wet/dry vac] can be identified through discovery, and by tracing secondary sales from purchasers who did buy directly from [defendant]. *Cromeans v. Morgan Keegan & Co.*, 303 F.R.D. 543, 551 (W.D. Mo. 2014).

Turning to the requirements of Rule 232(a), the Rule contains four requirements applicable to all proposed classes (1) the class is so numerous that joinder of all members is impracticable (numerosity); (2) there are questions of law or fact common to the class (commonality); (3) the claims or defenses of the representative party are typical of the claims or defenses of the class (typicality); and (4) the representative party will fairly and adequately protect the interests of the absent class members (adequacy). Fed. R. Civ. P. 23(a).

**Numerosity**

Rule 23(a)(1) requires that "the class is so numerous that joinder of all members is impracticable." In determining whether or not the numerosity requirement is satisfied, "the nature of the action, the size of the individual claims,

the inconvenience of trying individual suits, and any other factor relevant to the practicability of joinder is relevant." *Emanuel v. Marsh*, 828 F.2d 438, 444 (8th Cir. 1987), *cert. granted and judgment vacated on other grounds*, 487 U.S. 1229, (1988) (citing *Paxton v. Union Nat. Bank*, 688 F.2d 552, 559–560 (8th Cir. 1982)). Here, Plaintiffs have established that defendant has sold millions of its wet/dry vac nationwide since 2007. The sales are dispersed throughout the country, including in states represented by the class plaintiffs. The proposed class of plaintiffs is substantially larger than other classes that have been approved for certification within this circuit. *Ark. Educ. Ass'n v. Bd. Of Educ.*, 446 F.2d 763, 765 (8th Cir. 1971) (20 class members sufficient); *Paxton v. Union Nat. Bank*, 688 F.2d 552, 561 (8th Cir. 1982) (impracticable to join some portion of the 74 black employees of defendant bank who received lesser promotions than their white counterparts). Because the class size would render joinder impractical, the numerosity requirement of Rule 23(a)(1) has been satisfied.

**Commonality**

Rule 23(a)(2) requires that "there are questions of law or fact common to the class." "Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury,'" which "does not mean merely that they have all suffered a violation of the same provision of law." *Wal–Mart*, 564 U.S. at 350, 131 S.Ct. 2541. The "claims must depend upon a common contention" and "[t]hat

16

common contention...must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id*.

There is clearly a common contention here. Plaintiffs all claim that the peak horsepower of the wet/dry vac was misrepresented and misleading causing the injury of paying more for something and actually getting less that what they intended. While the Court recognizes that defendant argues that some of the purchasers purchased the wet/dry vac for reasons other than the stated peak horsepower, the issues raised in this multidistrict litigation are whether the misrepresentations were made and whether damages were caused therefrom. Defendant's argument can be resolved throughout the litigation process with the claims of class members setting forth that they had indeed relied on the misrepresentation. If certain purchasers did purchase the wet/dry vac for reasons other than the advertised peak horsepower, those purchasers will likely not file a certified claim. Defendant's reliance on those few instances cannot overcome the common contention.

**Typicality**

Rule 23(a)(3) requires that the "claims or defenses of the representative parties are typical of the claims or defenses of the class." The burden of demonstrating typicality is fairly easily met, so long as other class members have

claims similar to the named plaintiff. *DeBoer v. Mellon Mortg. Co*., 64 F.3d 1171, 1174 (8th Cir. 1995) (citing *Paxton*, 688 F.2d at 562). Rule 23(a)(3) "requires a demonstration that there are other members of the class who have the same or similar grievances as the plaintiff." *Donaldson v. Pillsbury Co*., 554 F.2d 825, 830 (8th Cir. 1977).

The Court is satisfied that plaintiffs' claims have the same characteristics as the claims of the class at large. The Complaint is premised on the representation of peak horsepower that was impossible to attain in an ordinary household outlet, which is the same course of conduct at issue for all members of the proposed class. Additionally, plaintiffs' claims would implicate the same legal theories and factual assessments of class members. In response, defendant would be able to raise the same defenses to each of the claims. Thus, the representative parties would have the same claims and defenses as the class, and the typicality requirement of Rule 23(a)(3) has been met.

**Adequacy**

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." The Court finds that Plaintiff possesses the same interest and injury of violations as the class, has no currently discernable interests antagonistic to the interests of other class members, and is being represented by competent class counsel. Plaintiffs purchased a wet/dry vac,

and claim they were injured by the alleged false representations of defendant. Defendant has produced nothing to demonstrate that class counsel are not capable and competent to litigate the class claims. Thus, the adequate representation requirement of Rule 23(a)(4) is met. *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 625–27, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997).

**Rule 23(b) Requirements**

In addition to showing that the requirements of Rule 23(a) are met, the party seeking certification must also satisfy through evidentiary proof at least one of the provisions of Rule 23(b). *Comcast, supra*, 133 S.Ct. at 1432. Plaintiffs assert that this action satisfies Rule 23(b)(3), which states that:

(b) [...] A class action may be maintained if Rule 23(a) is satisfied and if:

[...]

(3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:

(A) the class members' interests in individually controlling the prosecution or defense of separate actions;

(B) the extent and nature of any litigation concerning the controversy already begun by or against class members;

(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(D) the likely difficulties in managing a class action.

**Questions of Law or Common Facts Predominate**

Rule 23(b)(3) does not require a showing that questions common to the class that predominate will be answered, on the merits, in favor of the class. *Amgen*, *supra*, 133 S.Ct. at 1191. Instead, the requirement that common questions predominate over individual questions "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Blades v. Monsanto Co*., 400 F.3d 562, 566 (8th Cir. 2005) (quoting *Amchem*, *supra*, 521 U.S. at 623, 117 S.Ct. 2231). "[T]he court must look only so far as to determine whether, given the factual setting of the case, if the plaintiffs general allegations are true, common evidence could suffice to make out a prima facie case for the class." *Ibid.*

Bearing this in mind, whether defendant misrepresented through advertisements that the wet/dry vac had a certain peak horsepower to the class is the common question that predominates over any inquiries affecting only individual members raised by defendant, Because this question predominates over the individual inquires raised by defendant and warrants class-wide adjudication, the predominance requirement of Rule 23(b)(3) is satisfied.

**Class Action Is The Superior Method Of Adjudication**

This factor requires the Court to determine whether the class action is manageable, taking into consideration choice of law determinations, notice to class members, etc. *In re Baycol Prod. Litig*., 218 F.R.D. 197, 209 (D. Minn. 2003) (involving varying state laws governing products liability) (citing *Castano v. Am. Tobacco Co.,* 84 F.3d 734, 747 (5th Cir. 1996)). Because this matter involves common questions of fact and law the class members can be identified and maintenance of this class would be manageable.

The "most compelling rationale for finding superiority in a class action" exists here, since this action is a "negative value suit"—where the value of claims is so insubstantial that individual lawsuits would be unlikely or unfeasible. *Castano*, 84 F.3d at 748. Class members would most likely spend more money to litigate their suits than what they can individually gain. The interest of members in individually controlling the prosecution of separate actions is minimal. Fed. R. Civ. P. 23(b)(3)(A).

Moreover, individual adjudication of all potential claims which involve common issues presented by all members would be unrealistic and unnecessarily repetitive. Case-by-case adjudication would not create a brilliant beacon of judicial economy. Thus, the Court finds that class action would be the superior method of adjudication, and the superiority requirement of Rule 23(b)(3) is satisfied.

## Conclusion

The court has conducted a rigorous and painstakng analysis to ensure that plaintiffs satisfied all Rule 23 requirements for certifying a class. The court has reviewed the materials submitted in favor of and against class-action certification, with an eye focused upon satisfying the concerns expressed by the Eighth Circuit. The court finds that plaintiffs have shown that class action certification is undoubtedly appropriate.  Based therefore on the foregoing, the Motion for Class Certification [Doc. No.  115] is granted.

Accordingly,

**IT IS HEREBY ORDERED** that pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3), the Court certifies this matter as a class action. The class is defined as follows:

All Purchasers of the RIGID wet/dry vacuum,

**IT IS FURHTER ORDERED** that the Court certifies a Louisiana sub-class under the theory of redhibition.

**IT IS FURTHER ORDERED** that the parties meet and confer within twenty-one (21) calendar days of the filing of this Order to agree on the proposed notice to potential class members pursuant to Federal Rule of Civil Procedure 23(c)(2)(B). The notice shall be submitted to the Court within twenty-eight (28)

calendar days of the filing of this Order.

Dated this 1st day of December, 2017.

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE